### FURTH *v.* FURTH.

Opinion delivered January 16, 1911.

MARRIAGE—VALIDITY OF CONTRACT MARRIAGE.—If a present contract of marriage between a man and a woman, followed by cohabitation, is valid at common law, the common law in this respect has never obtained in this State, in view of the statutes regulating the method of solemnizing marriages and designating who are authorized to solemnize them.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

On the 21st day of June, 1907, Robert A. Furth died in the city of Little Rock, Arkansas, owning a large amount of real and personal property. He left a will in which he devised the bulk of his estate to his mother. Sam Blum was appointed and duly qualified as the executor of his will. The appellant claimed to be his widow, and instituted suit for dower in his real and personal estate. The executor and devisees under the will of R. A. Furth, deceased, were made parties to the action. Appellant does not claim that any marriage ceremony was ever performed between her and R. A. Furth; but she claims to be his widow under what is generally called a "common-law carriage." That is to say, she claims that in May, 1906, there was a consummated agreement in the State of Arkansas to marry between her and R. A. Furth by words in the present tense, followed by cohabitation until his death in June, 1907; and that this constitutes a valid marriage under the laws of the State of Ark-

ansas.  Appellant introduced evidence tending to establish her claim, and appellees introduced evidence tending to disprove it. The views which we shall express in the opinion render it unnecessary to abstract the evidence, or to pass upon the weight of it.

The chancellor dismissed her complaint for want of equity, and she has duly prosecuted an appeal to this court.

*Watkins & Vinson,* for appellant.

A common law marriage is good in Arkansas where the common law has been adopted by statute.  Kirby's Digest, § 623; 28 Ark. 21; 34 Ark. 512; 80 Ark. 485; 82 Ark. 81; 88 Ark. 196.

This rule is followed in nearly all the other States.  43 Ala. 57; 117 Ala. 80; ·119 Ala. 636; 94 Ala. 99; 75 Cal. 5, 18, 29; 18 Col. 158; 32 Pac. 68; 10 Col. App. 303; 50 Pac. 1049; 68 Atl. 1068; 68 N. J. Eq. 736; 132 Mo. 555-561; 66 Mo. 391; 132 Mo. App. 555-576; 31 Miss. 211; 49 *Id.* 357; 53 *Id.* 57; 36 Neb. 808; 110 N. W. 935; 92 Pac. 490, and many others.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

A common law marriage is not valid in Arkansas.  Our marriage acts are mandatory and must be complied with.  7 Mass. 48; 1 Yerger 177; 2 Dev. & Bat. 177; 19 Me. 155; 20 Vt. 582; 19 N. H. 257; 1 Abb. Cr. Ct. (U. S.) 525; 35 Mid. 361; 29 W. Va. 732; 4 Wash. 570; 54 Pac. 143.  The cases of 28 Ark. 19; 82 *Id.* 76; 8 *Id.* 481; 113 S. W. 1027 do not settle the question. Rev. St. 1838; Gantt's Dig., § 4179; Kirby's Digest, § 5194; Acts 1866, 52; Acts 1881, 189; Acts 1891, 59. Ch. Kent in 4 Johns, 52 held that a contract of marriage *per verba de praesenti* amounted to an actual marriage.  This has been followed in sixteen States.  See cases collected 26 Cyc. 840-1 and 19 Am. & E. Enc. Law 1195-6-7.  Eleven States have followed 7 Mass. 48 *supra*.  The United States Supreme Court has followed the State courts in cases from those States.  1 How. 219; 96 U. S. 76; Parsons on Contracts (8 ed.), vol. 2, p. 78; Keezer on Mar. & Div., § 19.

HART, J., (after stating the facts).  It is claimed by appellant that in May, 1906, in the State of Arkansas, she and R. A. Furth mutually agreed from that time to be husband and

wife, and that pursuant to such agreement they cohabited and lived together as husband and wife until his death in June, 1907. Conceding, without deciding, that a preponderance of evidence establishes that fact, were they married under the laws of the State of Arkansas?

Because the marriage relation is the source from which arises the home and the family, we have concluded to decide this question, rather than pass upon the preponderance of the evidence in the case.

It is contended by counsel for appellant that the question is settled in her favor by the decision of this court in the case of *Jones* v. *Jones,* 28 Ark. 19. We cannot agree with them. In that case Delilah Jones claimed to be the widow of Elbert Jones under a marriage to him in Tennessee before they came to Arkansas, and that was the question decided by the court. We have recognized the question as an open one in this State in the decision of *O'Neil* v. *Davis,* 88 Ark. 196; and now pass upon it as a case of first impression in this State.

In the case of *Denison* v. *Denison,* 35 Md. 361, the Supreme Court of Maryland, while recognizing that a contract of marriage *per verba · de praesenti* constituted a valid marriage by the canon law of Europe, said:

"The civil and canon laws * * * have no operation in England, except only as they may have been incorporated into the system of the common law, and in ascertaining what was the law of England in regard to the mode and manner of contracting marriage prior to or independently of the marriage act of 26 George II, passed in 1753, we do not appeal to the civil or canon law as such, but to the common law as a system peculiar to England and her institutions."

After reviewing the authorities, the court continued as follows: "From all the common law authorities it would appear that the contract *per verba de praesenti,* or *per verba de futuro cum copula,* could be carried into effect and execution by the ecclesiastical courts. But until such contract was sanctioned by religious ceremony, duly performed, the marriage was incomplete, and did not confer the civil rights incident to the marriage state." The court concluded the discussion by saying: "Such then being the law of England upon this subject, prior to and

independently of the marriage act of 26 George II, which was never adopted in this State, in what does that law differ from the law as it has heretofore existed and still exists in this State? It is true, the common law of England has been adopted by the people of this State, but only so far as it could be made to fit and adjust itself to our local circumstances and peculiar institutions. The ecclesiastical policy of England forms no part of the common law as we have adopted it. We have in our system no tribunal, as in England, clothed with power and jurisdiction to enforce the solemnization of marriages between parties contracting *per verba de praesenti*. Unless, therefore, there be something in the law of this State, apart from the common law of England, to render such contracts valid without solemnization, it follows necessarily that they can, at most, only be valid, to the extent that they are good at the common law without solemnization; and, as we have seen, such unsolemnized marriages are incomplete, and are not effectual to confer legitimacy upon the issue, nor the rights of property upon the parties—a right that is attempted to be enforced in this case."

Even if it can be said that a present contract of marriage between a man and a woman, followed by cohabitation, is valid under the common law, we hold that the common law in this respect has never obtained in this State, and follow the ruling of *Morrill* v. *Palmer*, 68 Vt. 1, 33 Atl. 829, and *Milford* v. *Worcester*, 7 Mass. 48. See also *Commonwealth* v. *Munson*, 127 Mass. 459, 34 Am. Rep. 413, in this respect.

It is true that in 1816, while Arkansas was a part of the Missouri Territory, a statute was enacted adopting the common law of England and the general acts of the British parliament up to the fourth year of James the first (March 24, 1607), as a part of its system of laws; and that this statute remained when Arkansas was formed into a territory; and with some change of phraseology was re-enacted as a part of the laws of the State. Kirby's Digest, § 623.

But it is equally true that in 1806 the following acts relative to the solemnization of marriages were passed.

"Sec. 1. All marriages heretofore solemnized in this Territory, by any preacher of the gospel, magistrate or regularly or-

dained clergyman, shall be, and the same are hereby declared to be, good and valid in law to all intents and purposes.

"Sec. 2. From and after the passage of this act it shall be lawful for any preacher of the gospel, magistrate, or regularly ordained clergyman to perform the ceremony of marriage within this Territory, to be certified and recorded, and the certificate to be filed, and the clerk to be entitled to the same fees as is provided in the second section of this act.

Sec. 4 provides that the person solemnizing any marriage shall file certificate with the clerk for record. Laws of Arkansas Territory, p. 394.

Sec. 2 of the schedule of the Constitution of 1836 provides that "all laws now in force in the Territory of Arkansas, which are not repugnant to this Constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the General Assembly."

Hence these sections remained as a part of our laws until the adoption of our first marriage act on February 20, 1838. See Revised Statutes of Arkansas, chapter 94, p. 535.

Sec. 1 of the act provides that marriage is considered a civil contract.

Sec. 10 designates the persons who may solemnize marriages.

Sec. 11 provides how a minister or priest is authorized to do so, and

Sec. 12, how the ceremony is to be performed.

Sec. 13 provides that religious societies which reject formal marriages may join together in marriage such persons as are of the society according to the forms, custom or rites of the society to which they belong.

Sec. 14 provides for the certificate of marriage to be transferred to the clerk and by him to be recorded.

This chapter, with some changes and amendments, is a part of our statute law on the subject of marriage today. Kirby's Digest, chap. 107.

Thus it will be seen that it has always been the practice with us for marriages to be solemnized by some minister of the gospel or officer authorized by statute to perform the marriage ceremony. While marriage is a civil contract, it is also a state or condition from which all the varied relations of our social

fabric spring and exist. It will be noticed that, before the common law became a part of our laws by statutory enactment, a statute had been passed validating marriages theretofore solemnized by any preacher of the gospel, magistrate or regularly ordained clergyman, and also providing what persons might thereafter legally solemnize marriages. See Laws of Arkansas Territory, p. 394. This shows that, before the common law was adopted as a part of our system of jurisprudence, marriage was regarded as something more than a contract between the parties to be formed by present words of agreement to live together as husband and wife, and that such contract could not be entered into without being solemnized by some person authorized by statute to do so.

This view is strengthened from the fact that the Revised Statutes provided that marriages between persons belonging to societies which rejected formal marriages might be celebrated according to the forms, customs and rites of such societies; and that from the earliest times the Territory and subsequently the State has passed validating acts relating to marriages, and acts requiring persons contracting marriages in this State to first obtain a license.

It will be seen that, before the common law was adopted here, statutes had been enacted which regulated marriages, and which prescribed the manner and form in which they might be solemnized. Such statutes having directed that marriages should be solemnized in a particular manner before certain authorized persons, that way is exclusive; and we hold our statutes regulating and prescribing the manner and form in which marriages may be solemnized are mandatory and not directory merely. In short, we hold that the doctrine of so-called common law marriages has never obtained or become a part of the laws of this State. We are not unmindful that the learned commentator, Chancellor Kent, reached a different conclusion, and that a majority of the courts of last resort have followed his decisions. We may add that the cases on both sides of the question have been cited and ably discussed by counsel in their respective briefs. Most of them will be found collected under the subject of marriage in 26 Cyc. 840 and 841 and in 19 Am. & Eng. Ency. of Law, 1195, 6 and 7.

We have made our decision after mature deliberation, and a careful consideration of the authorities bearing on the subject, believing that the views we have expressed and adopted are in accord with the whole system of our marriage laws, and will best foster and protect the home, and promote the sacredness of the marriage relation, which is the foundation of the family and the origin of all forms of government. Nothing can be gained by an exhaustive review of the many decisions on the subject; for each can be but a repetition in a different form of the reasons given in the earlier leading cases on the question.

The decree will therefore be affirmed.