Woods v. Bell.

4-9390                                    236 S. W. 2d 63

Opinion delivered February 5, 1951.

*John E. Hooker,* for appellant.

*Reinberger & Eilbott,* for appellee.

MINOR W. MILLWEE, Justice. The sole issue in this case is whether plaintiff (appellant) is a legitimate child and heir-at-law of Will Bell, deceased, and therefore entitled to share in his estate. Will Bell was an elderly negro who resided at Pine Bluff, Arkansas, for several years prior to his death, intestate, in 1949. He owned several lots in Pine Bluff at the time of his death. Bell was married to defendant, Lucille Bell, in 1942 and a son, Will Bell, Jr., was born of this marriage.

Plaintiff brought this partition suit against Lucille Bell as the widow of Will Bell, deceased, and guardian of Will Bell, Jr. She alleged that she was a daughter of deceased by a former marriage and that she and Will Bell, Jr., were the sole heirs of Will Bell, deceased, and tenants in common of the lots, subject to the dower rights of Lucille Bell. The answer of Lucille Bell denied these allegations. Trial resulted in a decree dismissing plaintiff's complaint.

The chancellor found that plaintiff was the daughter of Will Bell, but concluded that the evidence was insufficient to establish a marriage of Bell to plaintiff's mother. There being no record proof of such marriage, plaintiff sought to prove the existence thereof by reputation. She offered the testimony of her uncle and two aunts on this point. This evidence tended to show that plaintiff's mother, Helen Holloway, resided with her parents in Cleveland County about 1905; that Will Bell was working at a mill near the Holloway home at that time; and that an illicit relationship was carried on between Bell and plaintiff's mother for an indefinite period about this time. While they stated that Helen and Will ''were supposed'' to be married, none of the witnesses were able to establish a place where the parties actually lived together nor was it shown that they held themselves out as husband and wife at that time.

The following testimony of plaintiff's uncle, Thomas Holloway, is typical: ''Q. Going back now about when

was it your sister, Helen, and Will Bell started corres- ponding, I believe you called it? A. It was something like 1905. Q. By corresponding, you mean they were living together? A. I didn't see them living together. Q. What was she doing, keeping house for him? A. At the time I saw him, he was visiting, like a man is court- ing. Q. When the Mill was in Arkansas did they live together at all? A. I don't know. Q. Did you visit at their house? A. I lived with my mother. Q. Were they all there together? A. No, sir. Q. But when he went to Steen, Mississippi, she went with him? A. Yes, sir. The Court: Do you know of your own knowledge? A. I was just told that by him.'' There was no evidence of the issuance of a license or the performance of a marri- age ceremony.

Common-law marriages have never been recognized in this state. *Furth* v. *Furth,* 97 Ark. 272, 133 S. W. 1037. However, this court has held that marriage may be proved in civil cases by reputation, the declarations and conduct of the parties and other circumstances usually accompanying the relation. *Farmer* v. *Towers,* 106 Ark. 123, 152 S. W. 993; *Thomas* v. *Thomas,* 150 Ark. 43, 233 S. W. 808. In these cases there was evidence to estab- lish a time and place of a marriage ceremony followed by cohabitation for several years during which time the parties held themselves out as man and wife. In the Farmer case the marriage records of the county had been destroyed by fire and it was impossible to prove the marriage by record evidence. In the Thomas case there was proof of the issuance of a license and the perform- ance of a marriage ceremony. The chancellor correctly concluded that the evidence was not sufficient to estab- lish a valid marriage in Arkansas.

Plaintiff contends that even if there was no valid marriage in this state, a legal marriage was consum- mated in Mississippi. It is true that Mississippi rec- ognizes the validity of common-law marriages. In *Sims* v. *Sims,* 122 Miss. 745, 85 So. 73, the Mississippi court held that common-law marriages were validated by § 3249, Code of 1906 (§ 2556, Hemingway's Code). This

holding has been followed in later cases. *D'Antonio* v. *State,* 187 Miss. 648, 191 So. 281. It is also true that a common-law marriage contracted in another state where such marriage is valid, will be treated as valid in Arkansas. *Evatt* v. *Miller,* 114 Ark. 84, 169 S. W. 817, L. R. A. 1916C, 759.

Again, there is a paucity of proof that a common-law marriage was actually consummated in Mississippi. In this connection Thomas Holloway testified that Bell, after returning from Mississippi, told witness that Helen went to Mississippi with him and he referred to witness as his brother-in-law. Plaintiff's aunt testified that in 1910 her father became ill and she wrote a letter to Will Bell somewhere in Mississippi in an effort to get in touch with Helen and that Helen returned to Arkansas in response to this letter. This witness first testified that plaintiff was not born at that time. She later stated that plaintiff was born before 1910 and that someone sent plaintiff to her grandmother's home where she lived for several years. Thomas Holloway testified that plaintiff was born in Cleveland County, Arkansas. Plaintiff stated that she was born in Mississippi in 1907. Plaintiff's mother later married Kelsey Goings and they lived at Woodson, Arkansas. They later separated and in 1930 plaintiff and her mother moved to St. Louis, Mo., where her mother died in 1948. There is no evidence of a divorce by either Helen or Will. There is no direct evidence of a definite time or place of cohabitation of the parties in Mississippi and no proof that they held themselves out as husband and wife in that state. In fact no witness testified that they ever saw them living together.

Like the chancellor, our sympathies are with plaintiff. After observing the witnesses as they testified and carefully weighing and evaluating the evidence, the chancellor concluded that he was "far from being convinced these two people were married." We cannot say that this conclusion is against the preponderance of the evidence.

Affirmed.