DePotty v. DePotty.

5-1037                                            295 S. W. 2d 330

Opinion delivered November 5, 1956.

[Rehearing denied December 3, 1956.]

*Van Johnson,* for appellant.

*LeRoy Autrey* and *Kennis K. Williams,* for appellee.

J. SEABORN HOLT, Associate Justice. This is an action by appellant seeking to annul his marriage to appellee. From a decree denying and dismissing his prayer for annulment comes this appeal.

There appears to be little if any dispute as to essential facts. The parties were united in marriage in the border city of Texarkana on the Arkansas side by a duly ordained minister, whose credentials are not questioned, and the marriage was solemnized in the presence of witnesses according to the forms and customs of the church to which the minister belonged. The parties were fully competent to marry. Prior to the marriage requisite blood tests were had. They lived together for some 16 months prior to the present suit, holding themselves out as husband and wife. Prior to the marriage it appears undisputed that appellant borrowed from his wife approximately $3,000, which he had not repaid at the time of the marriage. It appears that all requirements for a valid marriage under our marriage statutes, § 55-201—55-236, Ark. Stats. 1947, were fully complied with, except the marriage license used was obtained on the Texas side of Texarkana in Bowie County, Texas. The parties at all times, until discord arose shortly before divorce proceedings were filed, lived together in good faith, cohabited as husband and wife, and believed that their marriage was legal.

The question presented for our determination, says appellant, is "whether residents of this state may legally contract marriage in this state with a license issued by a foreign state." Arkansas Statutes § 55-201 provides for the procurement of an Arkansas license by those contracting marriage. But we have no statute providing that a marriage is void where no license is obtained.

Here, a marriage license was issued by the State of Texas, but no Arkansas license was acquired. If § 55-201 is mandatory, the marriage is void. On the other hand, if the statute is merely directory, the marriage is valid. The appellant, in his contention that the statute is mandatory relied largely on *Furth* v. *Furth,* 97 Ark. 272, 133 S. W. 1037. The issue in that case was whether a common law marriage is valid in this State. In dealing specifically with that issue, the court said: ". . . we hold our statutes regulating and prescribing the manner and form in which marriages may be solemnized are mandatory and not directory merely. In short, we hold that the doctrine of so-called common law marriages has never obtained or become a part of the laws of this State." In the *Furth* case, there was no marriage ceremony of any kind, whereas, in the case at bar, there was a ceremonial marriage performed by a duly qualified minister.

Although there are some cases to the contrary, the great weight of authority holds that marriage license statutes are merely directory. In *Feehley* v. *Feehley,* 129 Md. 565, 99 Atl. 663, the court said: "There are differences of judicial opinion in various jurisdictions as to what are the essential features of a marriage under the rules of the common law, but the courts are generally in accord upon the proposition that a statutory provision for a license to marry shall not be regarded as mandatory, and vital to the validity of a marriage, in the absence of a clear indication of a legislative purpose that it should be so construed." The Supreme Court of Nebraska said in *Melcher* v. *Melcher,* 102 Neb. 790, 169 N. W. 720: "A marriage may be annulled when one of the parties is under the age of legal consent at the suit of the parent entitled to the custody of such minor . . . But that no license was obtained or that the license was obtained fraudulently is no ground for the annulment of a marriage." "Compliance with license statutes is not generally essential to the validity of a marriage, at least in the absence of statutory provision expressly making it so essential," 35 Am. Jur. 195. "Statutes in the various jurisdictions usually require a

license to be obtained. While, according to some authorities, such a statute is mandatory and a marriage performed without the required license is void, the general rule with regard to the construction of such statutes is that they are directory merely, and do not destroy the validity of a marriage contracted contrary to their provisions, unless it is provided, expressly or by necessary implication, that the marriage shall be invalid." 55 C. J. S. 857. A long list of cases from many different states are cited in support of the text. We believe the better view is that of the majority.

Affirmed.

Justices McFADDIN and MILLWEE dissent.

Justice WARD concurs.

PAUL WARD (concurring). My concurrence in this opinion springs from the hope that it will not in the future be misconstrued. It should be obvious to everyone that it deals with an important and sacred item of our social structure.

In the first place, it is unthinkable that this court should hold it has absolutely no power to decree valid a marriage in some extreme situation that might hereafter arise. For instance, let's suppose that these people had lived together for 40 years and had been blessed with several children who in turn had married and reared children. For this court to hold that they were never married would portend consequences of serious magnitude.

On the other hand I feel sure that this court does not desire to announce categorically that a marriage license is not necessary, or to put its stamp of approval upon mere cohabitation and dignify that relationship with the status of a legal marriage. Such is not the intent of the opinion in this case.

I feel sure that the opinion in this case intends only to approve a marriage relationship [without license] only where; (a) the parties engaged in a ceremony substantially in compliance with that prescribed by the

statutes; (b) the parties to the ceremony acted in good faith and believed that they were complying with all the provisions of our statutes; (c) they consummated the ceremony by cohabitation, and; (d) the proof of (a), (b), and (c) mentioned above is clear and convincing.

It is my thought that, in this opinion, our court has gone further than it has ever gone before in approving what might be termed a ceremonial marriage. It is easy to invision how this new power assumed and sanctioned by the court could be misconstrued and mis-applied.

Therefore, it seems to me that the majority opinion should have laid more stress on the items above mentioned, and, I think, it should have pointed out that this court will look with disfavor on a "marriage" without a license and will sanction it only if unusual circumstances and the social welfare clearly dictate such action.

Ed. F. McFaddin, Associate Justice (dissenting).

The majority opinion in this case will have a far-reaching effect on our marriage laws. It not only nullifies a portion of our Statutes, but also over-rules our cases and creates confusion and uncertainty regarding marriages. So I am compelled to dissent.

The validity of a marriage — in the absence of any questions of public policy in the domiciliary state—is determined by the law of the state wherein the marriage is contracted. So Arkansas has the right—in fact, the duty—to determine what is a valid marriage in this State. Our laws—as found in § 55-201 et seq. Ark. Stats.—provide for the issuance of a license, form of the license, applicants being required to take blood tests, sobriety, waiting period, performance of the marriage ceremony, and returning of the certificate of marriage to the issuing County. In short, up to the date of this case, if anyone had wanted to see about a marriage, the information could have been found in the office of the county clerk wherein the marriage license was issued. Hereafter where will we look for the recording of a marriage performed in Arkansas? According to this opinion, we will have to

look in one of the county clerk's offices in Texas. We might just as well have to look in Oregon, Maine, California or Mexico, and then consult every preacher in Arkansas to see if he had performed such a marriage in this State on a license issued in some other state. No record of such a ceremonial marriage in Arkansas on a license from another state could be found in any county courthouse in Arkansas.

There have existed for many years throughout the States of the American union two types of marriages: (a) a common-law marriage; and (b) a licensed (or statutory) marriage. A common - law marriage exists when a man and woman agree to live together and publicly do so. A licensed marriage—or statutory marriage —exists when a man and woman obtain a license from the proper authority to become husband and wife and then have a ceremony of marriage and return the certificate of marriage to the proper recording office. By Act No. 127 of 1875 (now found in § 55-201 Ark. Stats.), the Arkansas Legislature provided:

"All persons hereafter contracting marriage in this State are required to first obtain a license from the Clerk of the County Court of some County in this State."

It will be observed that this Statute says all persons contracting marriage *in this State;* and it says that such persons are *required* to first obtain a license; and it says that such license must be obtained from the Clerk of the County Court of some County *in this State.* Now, in the case at bar, the license was obtained from the County Clerk of a County in Texas; and so these parties did not comply with the law. In the case of *Furth* v. *Furth,* 97 Ark. 272, 133 S. W. 1037, the Arkansas Supreme Court in 1911 held that a common-law marriage could not be validly contracted in this State and furthermore held that compliance with our Statutes "is mandatory". Judge Hart used this language in this opinion:

"Because the marriage relation is the source from which arises the home and the family, we have concluded

to decide this question, rather than pass upon the preponderance of the evidence in the case ...

"It will be seen that, before the common law was adopted here, statutes had been enacted which regulated marriages, and which prescribed the manner and form in which they might be solemnized. Such statutes having directed that marriages should be solemnized in a particular manner before certain authorized persons, that way is exclusive; *and we hold our statutes regulating and prescribing the manner and form in which marriages may be solemnized are mandatory and not directory merely.*" (Italics our own.)

That case of *Furth* v. *Furth* has remained the cornerstone of our marriage law; and we cited it with approval as late as *Woods* v. *Bell,* 218 Ark. 307, 236 S. W. 2d 63, decided in 1951. But in the present case the majority holds that our Statute which says that a license is required, is not *mandatory,* even though we held in *Furth* v. *Furth* as above quoted, our Statutes ". . . are mandatory and not directory merely."

To sustain its conclusions in the case at bar, the majority says: "Although there are some cases to the contrary, the great weight of authority holds that marriage license statutes are merely directory." Of course there are some cases to the contrary; but the point is that the Arkansas Supreme Court has directly held that our marriage license statute is *mandatory;* and so I make the point that the present majority opinion over-rules our cornerstone case on the necessity of a marriage license being issued in this State. To sustain its holding, the majority cites only two cases and two general statements of the law. I discuss each of these:

1. The first case that the majority cites is *Feehley* v. *Feehley,* 129 Md. 565, 99 Atl. 663, L. R. A. 1917 (c) 1017. Here is the salient portion of the headnote to the case in 99 Atl. 663:

"Where two Catholics, who had been divorced, called in a priest, who went through a ceremony intended to be

an essential feature of the new marital agreement into which the parties were entering, the priest and the man and woman understanding that he was officiating in order that they might live together in lawful wedlock, the validity of the remarriage was not open to question.''

There are several reasons why this Maryland case should not even be persuasive in Arkansas; but one reason is sufficient to give, because it is shown in the opinion itself. It is this: the Maryland Court said in *Feehley* v. *Feehley* that it could reach the conclusion there reached because, under the laws of Maryland, the marriage statutes were directory and not mandatory[1]. But in Arkansas we have held that our marriage license statutes are mandatory; and we cannot continue to hold the marriage license statutes mandatory and follow a Maryland case based on the opposite holding. I submit that this Maryland case is absolutely no authority for an Arkansas Court to hold that people can get a license in Texas and have the marriage ceremony performed in Arkansas; and that is the point which the majority is holding in the case at bar.

2. The second case cited by the majority to sustain its conclusion is that of *Melcher* v. *Melcher*, 102 Neb. 790, 169 N. W. 720, 4 A. L. R. 492. But it must be remembered that common-law marriages are recognized in Nebraska[2]; so certainly a ceremonial marriage without a license would be recognized. The Nebraska case is no authority to justify the over-ruling of *Furth* v. *Furth*.

3. The majority next cites from 35 Am. Jur. 195 this quotation: ''Compliance with license statutes is not generally essential to the validity of a marriage, at least

---

[1] Here is some of the language from the Maryland opinion: ''. . . the courts are generally in accord upon the proposition that a statutory provision for license to marry should not be regarded as mandatory . . .''; and again: ''The principle that such provisions are directory only has been adopted in jurisdictions where a religious ceremony is not regarded as an essential element of a marriage according to the common law, and it would seem that in a state like our own, where this additional sanction and safeguard is required, there is even stronger reason for the rule that the validity of such a marriage should be sustained.''

[2] That common-law marriages are recognized in Nebraska can be learned by consulting an Annotation in 39 A. R. 538; and also by consulting Keezer on ''Marriage and Divorce'', 3rd Ed., page 1065 *et seq.*

in the absence of statutory provision expressly making it so essential.'' To sustain that text, cases are cited from a number of American jurisprudents, some of which recognize a common-law marriage and others of which hold that the requirement for a marriage license is directory and not mandatory. I find no case which recognizes the validity of a ceremonial marriage as coming from a State that holds the marriage license is mandatory; and that is exactly what we held in *Furth* v. *Furth*. The majority failed to cite 35 Am. Jur. 204, wherein the text reads: ''In a number of jurisdictions, the statutory requirements as to the manner and formalities of marriage are regarded as mandatory, and a common-law marriage is not valid''; and the first case cited to sustain that statement is the Arkansas case of *Furth* v. *Furth*. Furthermore, it is interesting to note that the tendency of states is to abrogate the validity of common-law marriages by statute. For instance, in 35 Am. Jur. 206, the Statutes of California, Illinois, Kentucky and Louisiana are mentioned to sustain the statement that in some states the common-law marriage was first adopted by the courts but later abrogated by the statutes. In the present case, the majority is nullifying our Statute.

4. Finally, the majority, to sustain its holding, cites from 55 C. J. S. 857, to the effect that the general rule is that marriage license statutes are directory merely. Let us admit that most states so hold, and that many states also recognize the common-law marriage. The point is that in Arkansas since 1875 the law has been that persons desiring to be married in this State ''are required to first obtain a license'' from the Clerk of the County Court ''of some County in this State''; and let it be remembered that in *Furth* v. *Furth* we held that Statute to be mandatory. The majority is now saying that even though the Statute was mandatory, still the marriage was valid.

As I see it, the majority is recognizing a hybrid state of marriage. Where is the authority for this Court to put validity into such a hybrid marriage? Let us agree

that it is an act of hardship to hold that these parties to this record are not married; but, if so, let the majority build some equitable estoppel in this one case rather than start us out on a new form of hybrid marriage. Merely because these particular parties were ignorant of the law is no excuse for upsetting our entire law regarding marriages. Ignorance may be bliss; but it does not excuse non-compliance with mandatory provisions of the law.

For the reasons herein given, I respectfully dissent.