DAVID M. GLOVER, Judge
Daniel Stovall appeals from the May 19, 2017 order denying his petition to quash Rudy Preston's motion to terminate guardianship. For his sole point of appeal, he contends: "The probate court erred and *639 acted contrary to law and public policy when it extended comity in a probate proceeding to a foreign marriage celebrated in Louisiana where the evidence was undisputed that the parties did not actually reside in Louisiana, at the time they celebrated the marriage, and where there was no evidence that the parties consummated the marriage in Louisiana, following the marriage ceremony, as required for extending comity to foreign marriages, under Ark. Code Ann. § 9-11-107(a)." We affirm.
By order entered on June 24, 2016, the trial court appointed Daniel Stovall ("Daniel") as guardian over his mother, 83-year-old Faye Stovall Preston ("Faye"), who had purportedly been married to Rudy Preston ("Rudy") for twenty-seven years. It is undisputed that Rudy executed a waiver of notice and entry of appearance for any hearings regarding Faye's guardianship. It is also undisputed he did not appeal the June 24, 2016 order appointing Daniel as guardian of the person and the estate of Faye. However, Rudy subsequently filed a motion to terminate guardianship, or alternatively to vacate and modify the order appointing a guardian and a motion for accounting, which he amended on December 22, 2016. Rudy pled the waiver was obtained through fraud, and he should have had the opportunity to address the court about the best interests of his wife. He further alleged Daniel had not used the guardianship to promote and protect Faye and her property, and Rudy sought an inventory and an independent medical evaluation.
On March 17, 2017, Daniel filed a petition to quash Rudy's motion to terminate the guardianship. In his petition, he alleged "further investigation" had revealed that, at best, the legal status of Faye's and Rudy's marriage was questionable, and it was likely they had never been legally married. Daniel relied upon Arkansas Code Annotated section 9-11-107 and 9-11-201 et seq. and contended the couple's "1994 Louisiana marriage on a boat by a captain," without ever having resided in Louisiana, rendered it invalid under section 9-11-107. Rudy responded and attached a Louisiana marriage license. It recited the marriage occurred in 1994 and the license was filed in 1995. By order filed on May 19, 2017, the trial court denied the motion to quash and found the Louisiana marriage valid under the laws of Arkansas. This appeal followed.
The statute Daniel relies upon is Arkansas Code Annotated section 9-11-107 (Repl. 2015):
(a) All marriages contracted outside this state that would be valid by the laws of the state or country in which the marriages were consummated and in which the parties then actually resided shall be valid in all the courts in this state.
(b) This section shall not apply to a marriage between persons of the same sex.[1]
(Emphasis added.) The italicized portion of the statute has given us pause because Rudy and Faye never resided in Louisiana. The statutory language, however, runs counter to at least two Arkansas Supreme Court cases.
First, in State v. Graves , 228 Ark. 378, 307 S.W.2d 545 (1957), our supreme court was faced with a situation in which it had to decide whether a Mississippi marriage between two underage Arkansas residents was valid in Arkansas. Mississippi allowed such marriages, but Arkansas did not. The court concluded the marriage was not void in Arkansas. Citing the Restatement on *640 Conflict of Laws, the court recognized the general rule is that a marriage valid where it is celebrated is recognized as being valid everywhere. It noted four exceptions to the general rule: 1) polygamous marriage, 2) incestuous marriage, 3) marriage between persons of different races, and 4) marriage of a domiciliary which the statute at the domicile makes void even though celebrated in another state. The court found none of the four exceptions applied to the situation at hand. The court quoted the following passage from 35 Am. Jur. 289:
Indeed, the view has been taken that if a statute, silent as to marriage outside the state, prohibits classes of persons from marrying generally or from intermarrying, or declares void all marriages not celebrated according to prescribed forms, it has no effect upon marriages, even of domiciled inhabitants, entered into or out of the state.
228 Ark. at 382, 307 S.W.2d at 547. In Graves , the supreme court further quoted from Feigenbaum v. Feigenbaum , 210 Ark. 186, 194 S.W.2d 1012 : "Upon one branch of the case there is no difference of opinion, and that is, that wherever the question of the validity of a marriage may arise, the question must be determined in accordance with the laws of the state where the marriage was contracted." 228 Ark. at 383, 307 S.W.2d at 548. The Graves opinion concluded with the following:
The celebration of a marriage gives rise to many ramifications, including questions of legitimacy, inheritance, property rights, dower and homestead, and causes of action growing out of the marital status. We have no statute which provides that marriages such as the one involved here, celebrated in another state, are void in the State of Arkansas.
228 Ark. at 386, 307 S.W.2d at 550.
Later, in Miller v. State , 235 Ark. 880, 362 S.W.2d 443 (1962), when our supreme court was confronted with allegations that a witness/wife could testify against her purported husband because their marriage was not valid, it cited Graves for the proposition that "[a] marriage valid where contracted is valid anywhere." 235 Ark. at 881, 362 S.W.2d at 444.
It is undisputed the marriage of Faye and Rudy is valid in Louisiana. There is a longstanding presumption of law that a marriage entered in due form is valid, and the burden of proving a marriage is invalid is upon the party attacking its validity. See , e.g. , Cash v. Cash , 67 Ark. 278, 54 S.W. 744 (1899). In addition, Arkansas cases holding marriage-license statutes are directory, not mandatory, see, e.g. , DePotty v. DePotty , 226 Ark. 881, 295 S.W.2d 330 (1956), are instructive with respect to Arkansas Code Annotated section 9-11-107.
In DePotty , 226 Ark. at 882-83, 295 S.W.2d at 330-31, our supreme court explained,
The question presented for our determination, says appellant, is "whether residents of this state may legally contract marriage in this state with a license issued by a foreign state." Arkansas Statutes, § 55-201 provides for the procurement of an Arkansas license by those contracting marriage. But we have no statute providing that a marriage is void where no license is obtained. Here, a marriage license was issued by the State of Texas, but no Arkansas license was acquired. If § 55-201 is mandatory, the marriage is void. On the other hand, if the statute is merely directory, the marriage is valid. The appellant, in his contention that the statute is mandatory, relied largely on Furth v. Furth , 97 Ark. 272, 133 S.W. 1037, 1038 [ (1911) ]. The issue in that case was whether a common law marriage is valid in this State. In dealing specifically with that issue, *641 the court said: "we hold our statutes regulating and prescribing the manner and form in which marriages may be solemnized are mandatory and not directory merely. In short, we hold that the doctrine of so-called 'common-law marriages' has never obtained or become a part of the laws of this state." In the Furth case, there was no marriage ceremony of any kind, whereas, in the case at bar, there was a ceremonial marriage performed by a duly qualified minister.
Although there are some cases to the contrary, the great weight of authority holds that marriage license statutes are merely directory. In Feehley v. Feehley , 129 Md. 565, 99 A. 663, 665 [ (1916) ], the court said: "There are differences of judicial opinion in various jurisdictions as to what are the essential features of a marriage under the rules of the common law, but the courts are generally in accord upon the proposition that a statutory provision for a license to marry shall not be regarded as mandatory, and vital to the validity of a marriage, in the absence of a clear indication of a legislative purpose that it should be so construed." ... While, according to some authorities, such a statute is mandatory and a marriage performed without the required license is void, the general rule with regard to the construction of such statutes is that they are directory merely, and do not destroy the validity of a marriage contracted contrary to their provisions, unless it is provided, expressly or by necessary implication, that the marriage shall be invalid." 55 C.J.S., Marriage, § 24, p. 857. A long list of cases from many different states are cited in support of the text. We believe the better view is that of the majority.
We see no discernible difference between section 9-11-107 and the statute at issue in DePotty . The clear focus of section 9-11-107 is to recognize as valid all marriages contracted outside of Arkansas that would be valid by the laws of the state or country in which the marriages were consummated. Here, as previously mentioned, it is undisputed the marriage between Rudy and Faye is valid under Louisiana law. To read the language of section 9-11-107 relied upon by Daniel to invalidate their marriage would fly in the face of the statute's stated purpose and run counter to the rationale employed in DePotty and the conflict-of-laws cases.
Finally, the cases Daniel relies upon involve common-law marriages. Those cases are distinguishable because even in states where common-law marriages are allowed, establishing a common-law marriage requires living together as husband and wife. That is, there is no "license" in a common-law marriage-rather, it is established by living together and holding each other out as husband and wife. Here, Faye and Rudy had a Louisiana marriage license. Although the parties have not provided us with any authority that directly addresses the language Daniel relies upon in section 9-11-107, we have concluded that (i) the "general rule" in conflict of laws cases, (ii) the rationale relied upon in the Graves and Miller cases, and (iii) the cases establishing similar statutes as directory rather than mandatory, provide us with sufficient legal authority to affirm the trial court's extension of comity to the Louisiana marriage license issued to Faye and Rudy in 1994 and the resulting denial of Daniel's petition to quash Rudy's motion to terminate the guardianship.
Both parties have moved for sanctions in this case. Finding no basis for awarding those sanctions, we deny both motions.
Affirmed; motions for sanctions denied.
Gruber, C.J., and Harrison, J., agree.

Subsection (b) was found to be unconstitutional in Jernigan v. Crane , 796 F.3d 976 (8th Cir. 2015). That subsection is not pertinent to the issue raised in this appeal.