In the Matter of the Estate of Moses WRIGHT, Deceased, Mozella WATSON and Mae Ethel BRUNSON *v.* Leola VALES

CA 80-444                    613 S.W. 2d 850

Court of Appeals of Arkansas
Opinion delivered April 15, 1981

*Hale, Fogleman & Rogers*, for appellants.

*Shaver, Shaver & Smith*, by: *J. L. Shaver*, for appellee.

Tom Glaze, Judge. This appeal involves an action to determine heirship filed by appellants, Mozella Watson and Mae Ethel Brunson, in the administration of the estate of Moses Wright, who died on December 31, 1977. The appellants alleged that they were the children and heirs of the decedent. Lillian Wright, the decedent's widow, was the administratrix of the estate, and in her response to appellants' petition, she acknowledged that appellants were the illegitimate children of Moses Wright, and acknowledged further that the appellee, Leola Vales, was also the illegitimate child of the deceased. Vales, on the other hand, filed an answer denying that the appellants were the children of Moses Wright, and alleged that they had no interest in the estate. The probate court found Vales to be the sole heir at law of Moses Wright, subject to the dower rights of his widow, and it held further appellants were not the children of the decedent, finding, rather, that they were the lawful children of Precious and Ernest Davis. The appellants appeal only from that part of the lower court's decree which denies they are the children and heirs of Moses Wright.

The specific facts which give rise to this appeal are not in dispute. In 1945, the appellants' mother, Precious Black,

married Ernest Davis in a ceremonial wedding performed by a minister. There is no evidence indicating a marriage license was issued or recorded. Precious Davis testified that in January, 1946, she and Mr. Davis permanently separated. She further testified that she and Moses Wright began to have a relationship in 1947 which lasted until July, 1949. During this period, Precious gave birth to both appellants and stated at the hearing below that Moses Wright was their father. In reaching its decision, the trial court primarily relied on the well known legal presumption that a child born in wedlock is legitimate. In so holding, the court also rejected the testimony of the appellants' mother, Precious Davis, in her attempt to rebut the presumption of legitimacy by stating Mr. Davis had no access to her during the period in which the appellants were conceived. We believe the trial court was correct on both points.

The presumption of legitimacy of children born during the wedlock of two persons is well grounded in common law and Arkansas statutory law. See *Bankston* v. *Prime West Corporation*, 271 Ark. 727, 610 S.W. 2d 586 (Ark. App. 1981). We also held in *Bankston* that a parent's testimony is incompetent when it is employed to bastardize a child. The trial court in the instant case followed both of these legal principles when it found that the appellants were the natural children of Ernest Davis.

Appellants, however, argue there never was a legal marriage between Precious and Ernest Davis because there is no evidence that a marriage license was issue and recorded as required by Arkansas law. The Supreme Court, however, in *DePotty* v. *DePotty*, 226 Ark. 881, 295 S.W. 2d 330 (1956) held that our marriage license statutes are merely directory and not mandatory, and although Ark. Stat. Ann. § 55-201 (Repl. 1971) provides for the procurement of an Arkansas license by those contracting marriage, Arkansas has no statute providing a marriage is void when no license is obtained. In *DePotty*, the court found valid a marriage between a couple who, without an Arkansas license, had a ceremonial marriage performed by a duly qualified minister. In view of the clear holding in *DePotty*, we find no merit in appellants' argument that the earlier Supreme Court case

of *Thomas* v. *Thomas*, 150 Ark. 43, 233 S.W. 808 (1921) requires that a person must procure a license *and* be married by a minister.

Appellants also contend the legitimacy presumption rule should not apply to them because the only proof in the record shows that Precious and Ernest Davis were not living together or cohabiting as husband and wife since January, 1946, and the oldest appellant, Brunson, was born March 11, 1948, over two years after the Davis' separation. It is true that a number of family members and a friend testified that Moses Wright acknowledged and held himself out as the father of appellants, but this is not sufficient evidence to rebut the appellants' legitimacy status. Our courts have long held that the presumption of legitimacy rule can only be overcome by the clearest evidence that the husband was impotent or without access to his wife. *Thomas* v. *Barnett*, 228 Ark. 658, 310 S.W. 2d 248 (1958). In the case at bar, there was no evidence concerning Mr. Davis' impotency, and the only evidence of nonaccess was presented through the testimony of Precious Davis, the wife. As mentioned earlier, the trial judge ruled this testimony incompetent and, in doing so, relied on the Lord Mansfield rule which has been recognized and adopted by our Arkansas courts. *Thomas* v. *Barnett* and *Bankston* v. *Prime West Corporation, supra.* In summary, our courts, in following the Lord Mansfield rule, have held that neither a husband nor wife is competent to testify to the husband's nonaccess in affiliation proceedings where such testimony would tend to prove a child conceived after marriage to be illegitimate. Applying this rule to the facts before us, we conclude the trial judge correctly refused to consider the testimony of Precious Davis, and therefore, failed to rebut the appellants' legitimacy status.

The appellants take rather strong exception to the application of the presumption rule which causes the appellants in the instant case to be the legitimate children of Ernest Davis rather than the illegitimate children of Moses Wright. Although appellants recognize the rule is founded on moral law and protects the innocent child, they argue its application here merely deprives them of their right to inheritance in the decedent's estate. We believe appellants'

perspective in this regard is much too narrow and fails to recognize the sound principles of public policy which are served by the rules followed by our courts in deciding cases where legitimacy issues exist. For instance, what application of these rules would the appellants ask us to take if Ernest Davis had died and left a valuable estate? Under these circumstances, the rules appellants urge us to ignore here would serve to protect their interest in any estate left by Davis. If we looked to the whims of the parties or equities in each case before deciding to apply or not apply these rules in legitimacy cases, there would be little stability or predictability in our descent and distribution or paternity actions.

For the foregoing reasons, we affirm.

Affirmed.

CRACRAFT, J., not participating.

COOPER, J., dissents.