**In re ROLLINS LEASING INC., GSC Enterprises and Richard W. Spaustat, Relators.**

No. 14–98–01350–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 11, 1999.

Rehearing Overruled March 26, 1999.

Norman Snyder, Jr., Margaret R. Banks, Houston, for relators.

James A. Porter, Houston, for intervenor.

Peter M. Kelly, Adam H. Miller, Houston, for real parties.

Panel consists of Justices YATES, FOWLER and SEARS.*

## OPINION

WANDA McKEE FOWLER, Justice.

In this mandamus proceeding, relators, Rollins Leasing Inc. ("Rollins"), GSC Enterprises ("GSC") and Richard W. Spaustat, contend the trial court clearly abused its discretion by signing a judgment nunc pro tunc to correct a judicial error after its plenary jurisdiction had expired. We agree and conditionally grant mandamus relief.

## I. BACKGROUND

In the underlying suit, the plaintiffs and real parties in interest, John Holman and Mamie Davis, sued for personal injuries arising out of a three-car collision that occurred on February 15, 1995. One vehicle was driven by Gregory Paul Wooten and another was driven by Spaustat, who the real parties alleged was in the course and scope of his employment with Rollins, GSC and/or Professional Labor Services, Inc. ("PLS"). All of the aforementioned individuals and companies are defendants in the underlying suit, which was filed in the 334th District Court of Harris County. Doctors Hospital East Loop ("Doctors Hospital") intervened in the underlying suit, but nonsuited its claims prior to the events that are the subject of this mandamus.[1] At a mediation held on July 7, 1998, the real parties settled with PLS. On July 22, 1998, the real parties and PLS filed an

---

\* Senior Justice Ross A. Sears sitting by assignment.

1. Because we granted Doctors Hospital's motion to withdraw its response, Doctors Hospital is no longer a real party in interest to this proceeding.

Agreed Motion To Dismiss With Prejudice, which was signed by counsel. The agreed motion states as follows:

> Now comes Plaintiff[s] John Holman and Mamie Davis and moves [sic] this Court for dismissal of this lawsuit with prejudice and without trial. Plaintiff[s] moves [sic] the Court to dismiss this case with each party to bear their own court costs. Released Parties agrees [sic] to Plaintiff's [sic] Motion for Dismissal and that each party pay their own costs of court.

> WHEREFORE, PREMSES [sic] CONSIDERED, Plaintiff[s] in this Court [sic] to enter an order of dismissal with each party bearing its own costs of court

The settlement agreement was not attached to the agreed motion when the motion was filed with the court on July 22, 1998. On July 30, 1998, without a hearing, a visiting judge signed an Order of Dismissal With Prejudice. The dismissal order, which was "approved as to form and content" by counsel, states as follows:

> Came on this day for consideration Plaintiff's [sic] Agreed Motion for Dismissal with Prejudice and the Court, having been advised that Defendants have no opposition to the Motion, finds that the Motion is well-taken.

> Accordingly it is ORDERED that Plaintiffs[']action is DISMISSED with PREJUDICE to the right of Plaintiff[s] to ever file this action again.

> It is FURTHER ORDERED that each party is responsible for and will pay their own costs of court.

The parties agree this order erroneously dismissed the entire suit, not just the claims against PLS, but also the entire suit. The real parties did not file a motion for new trial, a notice of appeal or take any other action within thirty days after the dismissal order was signed. Thus, the court's plenary jurisdiction expired on August 29, 1998.

On October 16, 1998, the real parties filed a motion for judgment nunc pro tunc. They asserted that "the [dismissal] order drafted by Oliva ... mistakenly dismisses the entire suit, not just the cause of action against [PLS]." Characterizing the mistake as a "clerical error," the real parties asked the court to enter judgment nunc pro tunc to reflect "the judgment actually agreed to by the parties." On October 23, 1998, after a non-evidentiary hearing, the presiding judge of the 334th District Court signed an order granting the real parties' motion for judgment nunc pro tunc and amending the July 30th order "to dismiss only those causes of action maintained against [PLS]."[2] On November 30, 1998, relators filed this mandamus.

## II. ANALYSIS

Relators contend the trial court committed a clear abuse of discretion by signing the judgment nunc pro tunc. Generally, mandamus relief is available if the trial court violates a duty imposed by law or clearly abuses its discretion, either in resolving factual issues or in determining legal issues, when there is no adequate remedy at law. *See Walker,* 827 S.W.2d at 839–40. Where the trial court's order is void, however, it is unnecessary for the relator to show it pursued other available remedies and mandamus will issue. *See In re Ford Motor Co.,* 965 S.W.2d 571, 573 (Tex.App.—Houston [14th Dist.] 1997, orig. proceeding). An order is void only when it is clear that the court entering the order had no jurisdiction over the parties or subject matter, no jurisdiction to enter the order, or no capacity to act as a court. *See State ex rel Latty v. Owens,* 907 S.W.2d 484, 485 (Tex.1995). Accordingly, mandamus is appropriate to set aside an order that is granted after the court's plenary power expires and that is, therefore, void. *See In re Dickason,* 987 S.W.2d 570 (1998).[3]

---

2. The hearing on the motion for judgment for nunc pro tunc was not transcribed.

3. Because of the intervention filed by Doctors Hospital, the real parties assert the trial court still had jurisdiction to correct the dismissal order and that mandamus is inappropriate. As we stated, Doctors Hospital non-suited its claims. Therefore, the question of whether the trial court had jurisdiction to correct its order is appropriate for mandamus.

Relators argue the visiting judge's dismissal order, which is essentially a judgment of dismissal, was the result of a judicial error, not a clerical error. Thus, relators assert the judgment nunc pro tunc signed by the presiding judge on October 23, 1998, after the trial court's plenary jurisdiction had expired, was void. *See* TEX.R. CIV. P. 329b(d).[4] After the trial court loses its plenary jurisdiction over a judgment, it can correct only clerical errors by judgment nunc pro tunc. *See* TEX.R. CIV. P. 329b(f); *see also Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex.1986). A clerical error is one which does not result from judicial reasoning or determination. *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex.1986). At any time, the trial court can correct a clerical error in *entering* a final judgment. *See Escobar*, 711 S.W.2d at 231 (emphasis in the original); *see also America's Favorite Chicken Co. v. Galvan*, 897 S.W.2d 874, 876 (Tex.App.—San Antonio 1995, writ denied). Once its plenary jurisdiction expires, however, the trial court cannot correct a judicial error made in *rendering* a final judgment. *See Escobar*, 711 S.W.2d at 231 (emphasis in the original); *see also America's Favorite*, 897 S.W.2d at 876. A judicial error is an error which occurs in the *rendering* as opposed to the *entering* of a judgment. *See Escobar*, 711 S.W.2d at 231 (emphasis in the original).

Whether an error is clerical rather than judicial is a question of law. *See Escobar*, 711 S.W.2d at 231; *see also America's Favorite*, 897 S.W.2d at 876. When deciding whether a correction is a judicial or clerical error, the court must look to the judgment actually rendered, not the judgment that should, or might have been rendered. *See Escobar*, 711 S.W.2d at 231. What judgment was actually rendered is a question of fact that must be answered first. *See id.* at 232; *see also America's Favorite*, 897 S.W.2d at 876. The court can only correct a final written judgment that incorrectly states the judgment actually rendered. *See Escobar*, 711 S.W.2d at 231–32. Thus, even if the court renders incorrectly, it cannot alter a written judgment which precisely reflects the incorrect rendition. *See id.* at 232.

This case is nearly identical to *National Unity Ins. Co. v. Johnson*, 926 S.W.2d 818 (Tex.App.—San Antonio 1996, orig. proceeding). There, the real party in interest, Gallegos, sued the relator, National Unity Insurance Company, and State Farm Mutual Automobile Insurance Company for damages resulting from an automobile accident with an uninsured motorist. *See National Unity*, 926 S.W.2d at 819. Pursuant to a settlement agreement, a visiting judge signed a take-nothing judgment in favor of National Unity and State Farm. Attorneys for all parties approved the judgment. *See id.* at 820. After the court's plenary jurisdiction had expired, Gallegos filed a motion to correct, reform or modify the judgment asserting that he dismissed National Unity by mistake and that he only meant to dismiss State Farm. *See id.* After a non-evidentiary hearing, the presiding judge of the County Court at Law No. 5 in Bexar County signed a judgment nunc pro tunc correcting the judgment to dismiss only State Farm. *See id.* National Unity filed a petition for writ of mandamus complaining that the presiding judge had no jurisdiction to sign the judgment nunc pro tunc because the judgment signed by the visiting judge was the result of a judicial error, not a clerical error. *See id.*

Following the Supreme Court's pronouncements in *Escobar*, the San Antonio Court of Appeals stated that "to determine whether the error at issue was judicial or clerical, we must examine whether the original judgment properly reflected what the trial court rendered." *Id.* The court observed that "[the presiding judge] could make the legal conclusion that the error to be corrected was a clerical error only after he made a factual finding that [the visiting judge] rendered a take nothing judgment only in favor of State Farm." *Id.* The court, however, found "a compete lack of evidence to support such finding." *Id.* The court noted that Gallegos offered no evidence that the visiting judge

---

4. The real parties suggest they actually filed a motion to correct judgment. Even if that were true, the motion would also be untimely. *See* TEX.R. CIV. P. 329b(g); *see also Riner v. Briargrove*

*Park Property Owners, Inc.*, 976 S.W.2d 680, 682 n. 1 (Tex.App.—Houston [1 st Dist.] 1998, n. pet. h.).

rendered any judgment other than that contained in the written judgment and that the parties simply presented the written judgment to the visiting judge and she signed it without any type of hearing or discussion. *See id.* The court concluded that under those circumstances, the rendition of judgment was reflected in the writing. *See id.*

The same circumstances exist here. For the presiding judge to reach the legal conclusion that the error to be corrected in the judgment of dismissal was clerical, he had to first make the factual finding that the visiting judge actually rendered a judgment dismissing only PLS. There is no evidence to support such a finding. There is no evidence that the visiting judge rendered a judgment other than the one contained in the July 30 th judgment of dismissal. Just like in *National Unity*, the parties simply presented the judgment of dismissal to the visiting judge and she signed it without any type of hearing or discussion. Clearly, the only judgment rendered was the one signed by the visiting judge. That judgment, the parties concede, erroneously dismisses the entire suit. When there is no difference between the judgment as rendered and a judgment as entered, any error in the judgment is judicial error. And, in such a case, the court may not change the judgment after its plenary jurisdiction has expired. *See America's Favorite*, 897 S.W.2d at 878.

▪ Nevertheless, the real parties argue the visiting judge's error was clerical because she intended to dismiss only PLS as evidenced by the agreed motion to dismiss, which refers to the agreement of the "released parties" The real parties point out they and PLS were the only "released parties" and the only parties to agree to the motion at the time it was filed. A similar argument was made in *National Unity*, where Gallegos argued that the language in the judgment signed by the visiting judge showed she intended to render judgment in accordance with the parties' settlement agreement, which did not provide for dismissal of claims against both defendants. *See National Unity*, 926 S.W.2d at 821. In rejecting this argument, the court noted that "the question is not what the trial judge

'intended' to render, but what the judge 'actually' rendered." *Id.* Because there was no evidence that the settlement agreement was presented to the visiting judge and because there was an "abundance" of language in the judgment indicating that both defendants were to be dismissed, the court found that the visiting judge's error was in rendition and thus, a judicial error. *See id.*

Likewise, the critical inquiry here, is not what judgment the visiting judge intended to render, but what judgment she actually rendered. A judgment nunc pro tunc should be granted only if the evidence is clear and convincing that a clerical error was made. *See Riner*, 976 S.W.2d at 682. There is nothing in the record that shows the visiting judge knew who the "released parties" were, or whether she thought the "released parties" referred to all the parties. Indeed, the real parties concede the settlement agreement was not attached to the agreed motion when it was filed with the court. Furthermore, the judgment of dismissal refers only to "defendants." Thus, the visiting judge's error was a not a clerical one in which she mistakenly entered a judgment dismissing all defendants after having previously rendered judgment dismissing only one defendant. Rather, the visiting judge committed a judicial error by erroneously rendering a judgment dismissing the entire suit.

Finally, the real parties argue the visiting judge's error could only have been clerical because she had a ministerial duty to nonsuit only the "released party," PLS. *See Abu–Ahmad v. Shadowbrook Apartments*, 776 S.W.2d 704, 709–10 (Tex.App.—Fort Worth 1989), *rev'd on other grounds*, 783 S.W.2d 210, 211 (Tex.1990); *but see America's Favorite*, 897 S.W.2d at 877–78 (holding that grant of nonsuit "with prejudice" was the result of a judicial error). The visiting judge did not grant a nonsuit. There is not a single reference to a nonsuit in either the agreed motion to dismiss or the judgment of dismissal. Rather, the visiting judge simply dismissed with prejudice the real parties' entire suit, albeit erroneously. Thus, the trial court's authority to grant a nonsuit has no relevance here.

Accordingly, because his plenary jurisdiction had expired, the presiding judge had no jurisdiction to correct the visiting judge's judicial error by judgment nunc pro tunc and that judgment is void. *See Escobar,* 711 S.W.2d at 231; *see also America's Favorite,* 897 S.W.2d at 876. Because the trial court committed a clear abuse of discretion by acting without jurisdiction, relators are entitled to mandamus relief. We are confident the trial court will vacate the judgment nunc pro tunc signed on October 23, 1998, and writ of mandamus will issue only if the court fails to comply.