Oscar STILLEY *v.* Margaret JAMES, Rick Grinnan,
Linda Varnado, and Alban Varnado *v.* John Speed

00–1463 48 S.W.3d 521

Supreme Court of Arkansas
Opinion delivered June 28, 2001

*Appellant, pro se.*

*Cross, Gunter, Witherspoon & Galchus, P.C.,* by: *Abraham W. Bogoslavsky,* for appellees Margaret James, Rick Grinnan, Linda Varnado, and Alban Varnado.

*Mike Spades, Jr.,* for appellee John Speed.

W.H."DUB" ARNOLD, Chief Justice. Appellant Oscar Stilley appeals the Sebastian County Circuit Court's order granting appellees Margaret James, Rick Grinnan, Linda Varnado, and Alban Varnado's motion for summary judgment. For reversal, appellant argues that it was error for the trial court to grant appellees' motion for summary judgment. As this matter involves an issue involving an attorney in the practice of law, this Court's jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(5). We affirm the trial court.

Appellees filed the present action under the Arkansas Declaratory Judgment Act, codified at Ark. Code Ann. § 16-111-101 (Repl. 1987), in an effort to collect a $200,000 judgment from appellant. Appellees asked the trial court to determine the rights and responsibilities of various parties under an indemnification agreement executed between appellant Oscar Stilley and cross-

appellee John Speed. The trial court granted the appellees' motion for summary judgment and ruled that the appellees were entitled to judgment against Mr. Stilley in the amount of $200,000, which was the amount of their original judgment against Mr. Speed.

This was the third of three related cases. In the first case, Mr. Speed had retained Mr. Stilley as counsel to prosecute claims for nonpayment of vacation pay and other compensatory time after he was fired from the employment of the Western Arkansas Chapter of the American Red Cross in 1996. He also made a claim for defamation against the Red Cross and others. The suit was dismissed without prejudice as to certain individual plaintiffs. The remaining claims went to trial.

The Red Cross counterclaimed, alleging that certain items were purchased for John Speed personally on Red Cross credit cards. Mr. Stilley, asserting that the counterclaim was meritless, orally promised to pay any judgment taken against Mr. Speed. Mr. Speed lost his direct claims and lost on the counterclaim, as well. The jury awarded the Red Cross almost $4,000, which was paid by Mr. Stilley.

On July 21, 1997, the appellees filed a lawsuit alleging a claim of malicious prosecution against both Mr. Speed and Mr. Stilley. Although Mr. Stilley was a co-defendant in this matter, he represented himself, as well as Mr. Speed. The malicious prosecution claim was scheduled for trial on February 14, 2000.

Sometime in January of 2000, Mr. Speed apparently began to be concerned about the representation being provided to him by Mr. Stilley. Mr. Speed spoke with Mike Spades, Jr., an attorney friend. Mr. Spades informed Mr. Speed that he felt there was a conflict of interest with Mr. Stilley representing him in the malicious prosecution case in which they were co-defendants and that Mr. Speed should hire his own, separate lawyer. This possibility was obviously communicated to Mr. Stilley, along with the fact that a continuance would be necessary. As Mr. Stilley did not want either of those two things to happen, he agreed to sign an indemnity agreement if he could continue representing Mr. Speed. As a result, an indemnity agreement was forwarded to Mr. Stilley.

In the cover letter to that indemnity agreement, Mr. Spades stated that Mr. Speed was willing to continue with Mr. Stilley as his attorney, as long as the indemnification agreement was signed. Mr. Spades went on to specifically state that if the indemnity agreement

was *not* returned immediately, he and Mr. Speed would have to revisit the issue of whether Mr. Speed should retain Mr. Spades as counsel.

On February 7, 2000, one week before trial, Mr. Stilley executed the indemnity agreement. Because he signed the indemnity agreement, Mr. Speed allowed Mr. Stilley to continue to represent both of them at trial. The indemnity agreement specifically referenced the malicious prosecution lawsuit and stated that Mr. Stilley received ten dollars, as well as "other good and valuable consideration." Mr. Stilley went on to say that he agreed to "indemnify and hold harmless the defendant, John Speed, for any damages assessed, apportioned, or otherwise charged to the co-defendant, John Speed, whether such damages are assessed, apportioned, or charged individually, or jointly and severally against John Speed and the co-defendant Oscar Stilley." The agreement even recognized the fact that such judgment should be paid in a speedy manner, as Mr. Stilley specifically stated that he would pay any such damages "in a timely manner within a reasonable period of time, to avoid collection action against John Speed so as to protect his credit rating and dignity."

In the trial of this case, Mr. Stilley, over appellees' objection, was allowed to take the witness stand and testify. At the end of the trial, the jury returned a verdict in favor of the appellees, and against Mr. Speed in the amount of $200,000. A directed-verdict was granted in Mr. Stilley's favor. Mr. Speed made demand upon Mr. Stilley to honor the indemnity agreement and pay the judgment to appellees, but Mr. Stilley refused. During postjudgment discovery, the appellees learned of the existence of the indemnity agreement and also made demand upon Mr. Stilley for payment of the judgment. Once again, Mr. Stilley refused to honor the indemnity agreement. No surety bond was ever posted in this matter. Mr. Stilley continued to refuse to honor the agreement.

On May 9, 2000, appellees filed a declaratory judgment action, seeking to have the court determine that Mr. Stilley was indebted to them for payment of the judgment which they had obtained against Mr. Speed. In light of the language of the written contract, and the undisputed facts of a judgment, with no surety bond having been posted, appellees' moved for summary judgment on their claim. Mr. Stilley filed his own motion for summary judgment, stating that there was no consideration given for the indemnity agreement.

The trial court held a hearing on these motions. At the end of the hearing, the court determined that Mr. Speed's decision to allow Mr. Stilley to represent both co-defendants, and thereby control the litigation stage of the lawsuit, constituted consideration. The court also was aware of no legal requirement that Mr. Speed had to personally pursue an appeal in order for Mr. Stilley to have to pay the judgment, especially since no such requirement was contained in the indemnity agreement. Finally, the court found that appellees were clearly third-party beneficiaries of this indemnity agreement, since they were the individuals to whom Mr. Stilley had promised to pay the judgment. Consequently, the court granted appellees' motion for summary judgment and entered judgment in favor of the appellees and against Mr. Stilley for the amount of the judgment which the appellees had obtained against Mr. Speed in the malicious prosecution trial. It is from these rulings that Mr. Stilley now appeals.

On appeal, appellant asserts the following:

1) The trial court erred in ruling that the failure to fire appellant as counsel constituted consideration for a contract with appellant, where there was no promise not to fire counsel, and where counsel was in fact fired shortly after the trial, without legal repercussions;

2) The trial court erred in ruling that one who claims indemnification is not obligated to cooperate with an appeal as a condition of the right to claim for indemnification;

3) The trial court erred in ruling that one who is found by a jury to have committed an intentional tort is entitled to indemnification despite the fact that he was found to have lied to the purported indemnitor, and tacitly concedes that he did in fact lie to the purported indemnitor to obtain the purported indemnity contract;

4) The trial court erred in ruling that a third party is entitled to a direct action against a claimed indemnitor, where neither the claimed indemnitee nor the claimed indemnitor intended by their conduct to confer any benefit on the third party.

We affirm.

## I. Standard of Review

 This court recently summarized the appropriate standard or review to be employed when determining whether a trial court erred in granting a motion for summary judgment in *Worth v. City of Rogers*, 341 Ark. 12, 14 S.W.3d 471 (2000):

> We have repeatedly held that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998); *Pugh*, 327 Ark. 577, 940 S.W.2d 445. Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Wallace v. Boyles*, 331 Ark. 58, 961 S.W.2d 712 (1998); *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable men might reach different conclusions from those undisputed facts. *George*, 337 Ark. 206, 987 S.W.2d 710.

*Id.* at 20, 14 S.W.3d at 475.

## II. Consideration

██ The argument raised below by Mr. Stilley, in an effort to avoid liability under the indemnity agreement with Mr. Speed, his client, was that there was *no* consideration given for this agreement. He contends, therefore, that the trial court erred in ruling that Mr. Speed's decision not to fire him as counsel constituted consideration for a contract with Mr. Stilley. Mr. Stilley asserts this claim despite the fact that he executed a written document with his client which plainly stated that he received "other good and valuable

consideration." For Mr. Stilley's present contention that no consideration was given to be accurate, he would have to admit that that statement in the indemnity agreement, which he averred by signing, was false. In this case, Mr. Stilley is attempting to introduce parol evidence to demonstrate a complete lack of consideration. Arkansas case law is clear that parol evidence may *not* be introduced to demonstrate a complete lack of consideration. *See Martin v. Rochelle*, 249 Ark. 509, 460 S.W.2d 70 (1970); *United Loan & Investment Co. v. Nunez*, 225 Ark. 362, 282 S.W.2d 595 (1955); *Toney v. Raines*, 224 Ark. 692, 275 S.W.2d 771 (1955). This, in fact, is the exact fact situation under which the parol-evidence rule was formulated, which was the basis for the trial court's decision.

■ The parol-evidence rule prohibits the introduction of extrinsic evidence, parol or otherwise, which is offered to vary the terms of a written agreement; it is a substantive rule of the law, rather than a rule of evidence, and its premise is that the written agreement itself is the best evidence of the intention of the parties. *First Nat'l Bank of Crossett v. Griffin*, 310 Ark. 164, 168, 832 S.W.2d 816, 819 (1992), *cert. denied*, 507 U.S. 919, 113 S.Ct. 1280 (1993).

In support of his argument that parol evidence is appropriate in this case, Mr. Stilley cites a single case, *Hamburg Bank v. Jones*, 202 Ark. 622, 161 S.W.2d 990 (1941). However, that case is clearly distinguishable to the current lawsuit because that case involved allegations of misrepresentation and fraud in the procurement of the contract. There are no such fraudulent allegations here; to the contrary, this is simply the classic case of an individual who signed an agreement acknowledging that he had received consideration, and is now trying to avoid his obligations under the contract. In fact, although no fraudulent allegations were asserted, if any fraud existed in the procurement of the agreement, it could be argued that it was on Mr. Stilley's part, as it appears that he executed the indemnity agreement so that he could continue to control the litigation of the suit, knowing that if a judgment was entered against Mr. Speed, he would then raise the issue of "no consideration" in an attempt to avoid payment.

■ In short, because parol evidence is inadmissible and because consideration did in fact exist, the appellees were clearly entitled to payment under the indemnity agreement, and the trial court's decision was correct.

### III. Cooperation with Appeal

██ Appellant asserts that Mr. Speed's cooperation with an appeal was required as a condition for indemnification and that the trial court erred in finding no such requirement. The simple answer to this question is "no." This argument raised by Mr. Stilley has, in fact, no support in law as applied to the facts of this case. The indemnity agreement between the parties made no reference to an appeal, or any indication or statement about cooperation, as most liability insurance contracts do. In fact, the indemnification agreement indicates that a judgment would be paid, or a bond posted, by Mr. Stilley *before* an appeal would begin, as it specifically states that any judgment against Mr. Speed would be paid by Mr. Stilley "before a collection proceeding commenced." Under Arkansas law, collection proceedings may begin within ten days after a final order is entered. Therefore, the plain language of this agreement clearly contemplates that Mr. Stilley would pay any such judgment, or post a bond, prior to an appeal and cannot be read to indicate that this step by Mr. Speed was necessary.

Not only do the undisputed facts of the case fail to support Mr. Stilley's argument on this point, he cites no case law in support of it. The only law he cites involves cooperation in settlement negotiations, which is not applicable to this case, since Mr. Stilley was defending Mr. Speed in this lawsuit and the indemnification agreement was executed approximately one week before trial of this matter. Mr. Stilley was, therefore, aware of the exact nature of the lawsuit, as well as the settlement discussions.[1]

██ Even more disturbing than the lack of factual or legal support for this argument is the fact that Mr. Stilley ignores the fact that he could have filed his own appeal. As an indemnitor, and the individual who would be liable for paying the judgment in this matter, Mr. Stilley had a pecuniary interest in this case and could have filed his own appeal. *See In re $3,166,199.00*, 337 Ark. 74, 987 S.W.2d 633 (1999); *In the Matter of Allen*, 304 Ark. 222, 800 S.W.2d 715 (1999). The fact of the matter is that Mr. Stilley could have pursued an appeal on his own behalf, but he would have had to actually honor his agreement and admit that he was responsible

---

[1] The record indicates that the appellees offered to settle the case against Mr. Speed for $3,000.00 and that Mr. Stilley did not convey the offer to his client; however, this is a disputed fact and is not a part of our consideration in deciding this case.

under the indemnity agreement with his client; however, Mr. Stilley admitted on the record that he intentionally did not appeal so that he could make the above "no-consideration" argument in order to avoid paying pursuant to the indemnity agreement.

## IV. Intentional Tort and Indemnification

Mr. Stilley next argues that the trial court erred in ruling that he had to indemnify Mr. Speed even though the judgment was for the intentional tort of malicious prosecution. Once again, Mr. Stilley can cite no law in support of this argument which is relevant to the facts of this particular case — where a lawyer agrees to indemnify a client one week before a trial is to begin. In addition, Mr. Stilley failed to make this argument below, and is therefore procedurally barred from raising it for the first time on appeal.

Mr. Stilley appears to be confusing what type of judgment that he indemnified Speed against (the tort of malicious prosecution) for what he alleged Mr. Speed did to him (come into his office, "mislead" him and tell a "bunch of lies"). In other words, Mr. Stilley entered into the indemnity agreement *knowing* exactly what type of judgment he was indemnifying Mr. Speed against, *even if* Mr. Speed lied to him. For these reasons, we find no merit in appellant's argument.

In support of his argument on this point, Mr. Stilley relies on cases involving insurance contracts, or other contracts of indemnity, which were executed *prior to* the act which is the subject of indemnification taking place. This case involves a situation where an indemnification agreement was entered into *after* the alleged improper conduct had occurred; and, since the only claim against Mr. Speed was for malicious prosecution, Mr. Stilley knew that the act he was indemnifying against was an intentional tort involving malice.

Indemnification agreements are contracts. As such, the clear meaning of the contract must be enforced. In looking at the contract in this case, it is clear that the trial court's decision was correct. Mr. Stilley executed a contract whereby he agreed to be responsible for *any* judgment which might be rendered against John Speed on a claim of malicious prosecution. The indemnity agreement begins by citing the fact that Mr. Speed and Mr. Stilley are the

"defendants in a lawsuit in Sebastian County, Arkansas, Case Number CV-97-538-II." Mr. Stilley was the attorney, and a co-defendant; he was, obviously, quite aware that the only outstanding claim against Mr. Speed on February 7, 2000, the date the agreement was executed, was a claim for malicious prosecution. After referencing the lawsuit, the agreement then states in clear and unequivocal terms that Mr. Stilley would "indemnify and hold harmless the defendant, John Speed, for any damages assessed, apportioned, or otherwise charged to the co-defendant, John Speed, whether such damages are assessed, apportioned, or charged individually, or jointly and severally against John Speed and the co-defendant Oscar Stilley." Since the jury did return a verdict against Mr. Speed on the claim of malicious prosecution, this is exactly the type of damages that the indemnity agreement provided for, and for which Mr. Stilley promised to indemnify Mr. Speed.

■ Based on the undisputed facts of this case, it is clear that the trial court correctly interpreted the express and unequivocal terms of the indemnity agreement and properly held Mr. Stilley responsible for the damages assessed against Mr. Speed, even though those damages were for an intentional tort, since they were the exact damages set forth in the agreement.

## V. Standing

■ ■ Appellant contends that appellees lacked standing to pursue a declaratory judgment action in this case. In addition to being a meritless argument, Mr. Stilley's argument on this point is contrary to Arkansas case law. First, this is an action brought under the Declaratory Judgment Act. Declaratory judgments are used to determine the rights and liabilities of respective parties. The purpose of a declaratory judgment is to prevent "uncertainty and insecurity with respect to rights, status, and other legal relations." Ark. Code Ann. § 16-111-102 (Repl. 1987). Under this Act, "[a]ny person interested under a . . . written contract . . . or his rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder." Ark. Code Ann. § 16-111-104 (Repl. 1987). The indemnity agreement in this case was established with the sole purpose of Mr. Stilley being liable for a judgment to the appellees if Mr. Speed had a judgment entered against him. Since such a judgment was entered against Mr.

Speed, it is *clear* that the appellees are "interested parties" whose "rights, status, and other legal relations are affected by a contract."

 Moreover, this promise by Mr. Stilley to pay Mr. Speed's "debts" (judgment) to appellees is a classic third-party-beneficiary scenario. As such, Arkansas law is clear that "a contract made for the benefit of a third party is actionable by such third party." *See Edgin v. Entergy Operations, Inc.,* 331 Ark. 162, 961 S.W.2d 724 (1998); *Howell v. Worth James Constr. Co.,* 259 Ark. 627, 535 S.W.2d 826 (1976). The trial court looked at the indemnity agreement, which stated that Mr. Stilley would pay money to the appellees if they obtained a judgment against Mr. Speed, and reached the conclusion that there was a direct benefit conferred upon the appellees. Therefore, the trial court clearly did not err in finding that appellees had standing to bring this lawsuit.

For the reasons stated above, we affirm the trial court's decision to grant appellees' motion for summary judgment. Further, we refer this matter to the Professional Conduct Committee for whatever action it determines is appropriate. See Model Rules of Professional Conduct Preamble, Rule 3.5(c); *Ortho-Neuro Med. Assoc. v. Jeffrey,* 344 Ark. 72, 37 S.W.3d 577 (2001); *Skokos v. Gray,* 318 Ark. 571, 886 S.W.2d 618 (1994).