Dickie Ray FRYAR *v.* Anna Ruth ROBERTS

01–186 57 S.W.3d 727

Supreme Court of Arkansas
Opinion delivered November 1, 2001

*J. Sky Tapp*, for appellant.

*Joseph P. Graham*, for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant, Dickie Ray Fryar, filed for divorce against the appellee, Anna Ruth Roberts, alleging that the parties married on September 24, 1998, and praying for a division of property acquired by the parties during the marriage. Ms. Roberts denied the existence of a marriage and asked the court, in the alternative, for an order annulling the marriage on the basis of fraudulent inducement. The Nevada

County Chancery Court granted summary judgment to Ms. Roberts on the basis that the parties failed to file their marriage license within sixty days of the date of the license and, thus, had failed to comply with the formalities necessary to create a legal marriage under Ark. Code Ann. § 9-11-218 (Repl. 1998). Mr. Fryar appeals that decision, claiming that the failure to do a ministerial act, such as returning the marriage license to the county clerk within sixty days of its issuance, cannot render a marriage void. We hold that the failure to comply with section 9-11-218 does not by itself defeat the existence of the alleged marriage in this case. Thus, genuine issues of material fact remain to be litigated as to whether a valid marriage existed between the parties. We reverse the trial court's summary-judgment order and remand the case for trial on the merits.

Mr. Fryar and Ms. Roberts participated in a marriage ceremony on September 24, 1998. They applied for and were issued a marriage license prior to the ceremony, and the minister signed their marriage license at the ceremony. However, the parties never filed the license with the county clerk's office after the ceremony. Mr. Fryar alleges that he and Ms. Roberts lived together for about one and one-half months following the ceremony, after which time he rented a separate house from her.

Ms. Roberts insists that the parties never intended to file the marriage license or to become legally married. She alleges that Mr. Fryar told her that his mother and daughter had knowledge of a sexual relationship between the parties and believed he would go to hell if he did not marry her. Thus, she claims Mr. Fryar proposed a "fake" ceremony to be performed by his cousin and represented to her that the marriage would not be valid. Ms. Roberts admits that, following the ceremony, she took possession of the marriage license and burned it. She alleges that the license was destroyed with the knowledge and consent of Mr. Fryar. She further claims that the parties never lived together as man and wife. In the alternative, Ms. Roberts asserts that, if the court does find the parties were legally married, the marriage should be annulled and declared void. She claims that, at the time of the ceremony, she was emotionally vulnerable due to the recent death of her husband and that she relied on misrepresentations by Mr. Fryar that the marriage would not be valid.

The trial court entered an order on October 26, 2000, granting summary judgment to Ms. Roberts on the basis that Arkansas does not recognize *de facto* or common-law marriages. The court cited our recent decision in *Rockefeller v. Rockefeller*, 335 Ark. 145,

155, 980 S.W.2d 255, 259 (1998), for the proposition that "[a] de facto marriage is similar to a common-law marriage in that both are legal fictions created when the parties have not completed the formalities necessary for creating a legal marriage." The trial court then concluded that Ark. Code Ann. § 9-11-218 (Repl. 1998), which requires that marriage licenses be filed in the county clerk's office within sixty (60) days from the date of the license, constituted a formality necessary to the existence of a legal marriage. Because it was undisputed that the parties in this case never filed their marriage license, the trial court ruled that they failed to "complete the requisite formalities to create a legal marriage."

We have repeatedly held that summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Stilley v. James*, 345 Ark. 362, 48 S.W.3d 521 (2001). Once a moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Id.* We have also stated that summary judgment is inappropriate where, although there may not be facts in dispute, the facts could result in differing conclusions as to whether the moving party is entitled to judgment as a matter of law. *Wallace v. Broyles*, 332 Ark. 189, 961 S.W.2d 712 (1998) (supplemental opinion denying rehearing).

On review of an issue of statutory interpretation, we are not bound by the decision of the trial court. However, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Newcourt Financial, Inc. v. Canal Ins. Co.*, 341 Ark. 181, 15 S.W.3d 328 (2000). Here, however, we hold that the trial court erred both in its interpretation of Ark. Code Ann. § 9-11-218 and in its application of the *Rockefeller* decision to the case at bar.

The Arkansas Code section at issue is entitled "Return of executed license to clerk — Effect on bond" and provides:

(a) Any person obtaining license under the provisions of this act shall be required to return the license to the office of the clerk of the county court within sixty (60) days from the date of license.

(b) If the license is duly executed and officially signed by some person authorized by law to solemnize marriage in this state, the bond required by § 9-11-210 shall be deemed null and void; otherwise, it shall remain in full force and effect.

Ark. Code Ann. § 9-11-218 (Repl. 1998). Importantly, the statute does not provide that failure to return the license renders a marriage void. Rather, the only remedy provided in the statute for noncompliance is that the one hundred dollar ($100) bond required by Ark. Code Ann. § 9-11-210 when applying for a license "shall remain in full force and effect." Section 9-11-210 expresses the legislature's intent that a bond be issued to ensure that parties applying for a marriage license have a lawful right to such and will faithfully carry into effect and comply with the provisions of the act. *See* Ark. Code Ann. § 9-11-210 (Supp. 2001).

■ Over the past ninety years, this court has handed down several decisions on the formalities that are necessary to create a valid marriage in Arkansas. We have clearly and consistently reiterated that Arkansas does not recognize common-law marriages contracted in this state. In the 1911 decision of *Furth v. Furth,* the appellant claimed to be the common-law wife of the decedent. 97 Ark. 272 (1911). She did not claim that a marriage ceremony was ever performed; rather, she claimed that she and the decedent entered into a contract of marriage, following which they cohabitated until his death. *Id.* This court noted that a contract of marriage could not be entered into without being solemnized by some person authorized by statute to do so. *Id.* In holding that common-law marriages are not valid under Arkansas law, we additionally held that "our statutes regulating and prescribing the manner and form in which marriages may be solemnized are mandatory and not directory merely." *Id.* at 273.

■ ■ The next case addressing compliance with marriage statutes in Arkansas was the 1921 decision of *Thomas v. Thomas.* In that case, there was evidence that the parties had been issued a marriage license and participated in a marriage ceremony performed by a preacher. *Thomas v. Thomas,* 150 Ark. 43 (1921). After the ceremony, the couple turned the license over to the preacher, but the license was never returned to the county clerk as required by statute. *Id.* The couple subsequently lived together until Mr.

Thomas's death, and testimony of several witnesses indicated that they were regarded as husband and wife in the community. *Id.* This court said: "The law in this State is that marriage may be proved in civil cases by reputation, the declarations and conduct of the parties, and other circumstances usually accompanying that relation. Declarations of the parties are evidence tending to establish marriage." *Id.* at 53. We found that there was sufficient testimony to establish a "ceremonial or legal marriage," and held that the testimony was not overcome because the marriage license was not returned as required by statute. *Id.* We further held, "[p]roof that [the couple] procured a license as required by the statute and were married by a minister of the Gospel showed a legal marriage, and the return of the minister of that fact on the marriage license was only evidence that the marriage had been performed by him, but did not of itself constitute the marriage." *Id.* The Thomas opinion held that failure to comply with the statute requiring return of the license did not void the marriage. At first glance, this language might appear to be in conflict with the language in *Furth* stating that compliance with our marriage statutes is mandatory. However, the language in *Furth* referred only to compliance with the statutes regulating solemnization of marriage. The licensing statutes are distinct from the solemnization statutes. *See* Ark. Code Ann. §§ 9-11-213 — 9-11-215 (Repl. 1998 and Supp. 2001). Thus, this court's decision in *Thomas* is not in conflict with the *Furth* decision.

■ In 1956, this court decided the case of *DePotty v. DePotty*. In *DePotty*, as in *Thomas*, there was evidence that the couple in question participated in a ceremonial marriage. *DePotty v. DePotty*, 226 Ark. 881, 295 S.W.2d 330 (1956). The ceremony was performed by a duly qualified minister in Texarkana, Arkansas, and was valid in all respects, except that the marriage license was obtained on the Texas side of Texarkana in Bowie County, Texas, and no Arkansas license was acquired. *Id.* The parties were fully competent to marry, had lived together for sixteen months, and held themselves out as husband and wife. *Id.* Mr. DePotty, however, sought to annul his marriage on the basis that the failure to obtain an Arkansas license rendered the marriage void under Ark. Stat. Ann. § 55-201 (1947), the precursor to one of our current licensing statutes, Ark. Code Ann. § 9-11-201(a)(Repl. 1998). *Id.* Section 55-201 provided that all persons contracting marriage in Arkansas were "required to first obtain a license from the Clerk of the County Court of some county in this State." Ark. Stat. Ann. § 55-201 (1947). This court rejected Mr. DePotty's argument, stating, "we have no statute providing that a marriage is void where no license is obtained." *Id.* at 882, 295 S.W.2d at 330. We reasoned that, if the requirement of a

license were mandatory, the couple's marriage would be void; but if the statute were merely directory, the marriage would be valid. In holding that the statute was merely directory, we adopted language from a decision by the Maryland Supreme Court: "[t]he courts are generally in accord upon the proposition that a statutory provision for a license to marry shall not be regarded as mandatory, and vital to the validity of a marriage, in the absence of a clear indication of a legislative purpose that it should be so construed." *See id.* at 883, 295 S.W.2d at 331 (citing *Feehley v. Feehley*, 129 Md. 565, 99 A. 663 (1916)). We noted the holding in *Furth* that the statutes prescribing the manner and form of the solemnization of marriage are mandatory, but distinguished that case on the basis that there was no marriage ceremony of any kind in *Furth*; whereas, in *DePotty*, the marriage was solemnized by a duly qualified minister.

Almost ten years later, in 1965, a different factual situation led to this court's decision in *Spicer v. Spicer* regarding the validity of an alleged marriage. In that case, Brenda Jones (Spicer) filed suit for divorce against Delmas Spicer, alleging the parties were married on September 20, 1963, in Oklahoma. *Spicer v. Spicer*, 239 Ark. 1013, 397 S.W.2d 129 (1965). Ms. Jones contended that the couple decided to get married, drove from Hilltop, Arkansas, to the home of a justice of the peace in a small town in Oklahoma, and were issued a marriage license and married by the justice of the peace. *Id.* She could not, however, remember the name of the town, the county, or the justice of the peace. *Id.* According to Ms. Jones's testimony, she and Mr. Spicer returned to their respective parents' homes in Arkansas without cohabitating in Oklahoma and never established a home as husband and wife. *Id.* Moreover, it was undisputed that, for a period of three months after the alleged marriage, Ms. Jones lived and worked in Little Rock under the name Brenda Jones and dated other men. *Id.*

Mr. Spicer, on the other hand, denied ever taking Ms. Jones to Oklahoma and denied marrying her. *Id.* In support of his testimony, he produced authenticated affidavits from the keepers of marriage records of each county in Oklahoma, attesting that a search had been made and no record of any marriage between the parties could be found. The chancellor found the existence of a voidable marriage, decreed that the marriage was annulled, and ruled that the child born during the voidable marriage was legitimate. *Id.* On appeal, this court recognized that there was no contention that the parties married in Arkansas or in any place other than Oklahoma. *Id.* We then went on to echo our holding in *Furth*: "Arkansas does not recognize common-law marriages. The statutes

regulating and prescribing the manner and form in which marriages may be solemnized in this state are mandatory and not directory." *Id.* at 1015, 397 S.W.2d at 130. Based upon a *de novo* review of the record, we held that Mr. Spicer had "proved by a great preponderance of the evidence that there was no valid marriage." *Id.* Though the Spicer opinion made no reference to, and possibly overlooked, the *DePotty* decision, it is clear that each case was decided upon particular facts that were deemed by the court to be controlling. In *DePotty*, there was evidence that the marriage had been solemnized; whereas, in *Spicer*, no credible proof of solemnization was shown.

█ Then, in 1981, the Arkansas Court of Appeals relied on *DePotty* in deciding *Estate of Wright v. Vales*. In the *Vales* case, there was no evidence that a marriage license was ever issued to or recorded by the couple in question. *Estate of Wright v. Vales*, 1 Ark. App. 175, 613 S.W.2d 850 (1981). The appellants in that case, like the appellee in this case, contended that, because there was no marriage license, there was no marriage. *Id.* The court of appeals quoted *DePotty* in holding that, although our statutes provide for the procurement of an Arkansas license by those contracting marriage, our marriage license statutes are merely directory and not mandatory.[1] *Id.* This language is consistent with our prior case law in which we have held that failure to comply with this state's licensing statutes, as distinguished from the solemnization statutes, does not void an otherwise valid marriage.

Finally, the trial court's order in this case cited *Rockefeller v. Rockefeller*, 335 Ark. 145, 980 S.W.2d 255 (1998). That case, however, is inapposite. *Rockefeller* involved a property agreement incorporated into a divorce decree that set out the amount of monthly payments to be made by a husband to his ex-wife. *Id.* The husband filed a petition for the termination of alimony, claiming that the section of the agreement requiring termination of payments upon the wife's remarriage should take effect because, though she had not legally entered into another marriage, she had been living with a man, had three children with him, and held herself out to be married to him. *Id.* The husband argued that his ex-wife was now engaged in a *de facto* marriage and that allowing her to avoid the consequences of marriage for her own financial gain violated the

---

[1] The Arkansas Office of the Attorney General has also relied on our courts' opinions in *DePotty* and *Vales*. In Opinion No. 96-362, issued December 19, 1996, the attorney general cited both *DePotty* and *Vales* and stated: "[i]t is my opinion that under Arkansas law, the requirement of obtaining and filing a marriage license is directory rather than mandatory." Op. Att'y Gen. # 96-362.

public policy of Arkansas. *Id.* This court affirmed the trial court in its holding that Arkansas does not recognize *de facto* marriages and that enforcing the agreement would not violate public policy. *Id.* We went on to state, as quoted by the trial court, that "[a] de facto marriage is similar to a common-law marriage in that both are legal fictions created when the parties have not completed the formalities necessary for creating a legal marriage." *Id.* at 155, 980 S.W.2d at 259. The *Rockefeller* opinion did nothing more than recognize our long-standing refusal to validate common-law marriages contracted in Arkansas.

In *Furth, Spicer,* and *Rockefeller,* one party was attempting to establish proof of the existence of a marriage without proof of compliance with our statutes regulating solemnization of marriages. In those cases, we recited language expressing our continuous refusal to recognize common-law marriage within the boundaries of this state. The cases of *Thomas, DePotty,* and *Vales* are clearly distinguishable from the cases reiterating our refusal to recognize common-law marriage. Under the precedent established by *Thomas* and its progeny, proof that a marriage license was procured and a couple was married by a minister can establish a legal marriage. *Thomas v. Thomas, supra.* Return of the license is only evidence that a marriage has been performed and does not itself constitute the marriage. *Id.* Statutes requiring a marriage license shall not be regarded as mandatory in the absence of a clear legislative purpose that the statutes should be so construed. *DePotty v. DePotty, supra.* The failure of the parties to obtain a marriage license does not void an otherwise valid marriage. *Estate of Wright v. Vales, supra.*

Similarly, in the case before us, there is evidence of solemnization of the marriage in the form of a wedding ceremony. There is also evidence that a marriage license was obtained, though it was never returned to the county clerk. Mr. Fryar is not asserting that the parties here were engaged in a *de facto* or common-law marriage; rather, he seeks to prove the existence of a valid marriage. According to the trial court's summary judgment ruling, there can be no valid marriage without the filing of the marriage license. Our decision today reveals authority to the contrary in instances where there is evidence that a purported marriage has been solemnized.[2] Based upon the pleadings, affidavits, and other documents filed by the parties, we conclude that genuine issues of material fact remain

---

[2] It should be noted that the only authority cited by the parties to the trial court was the *Rockefeller* case.

to be litigated concerning whether a valid marriage existed between Mr. Fryar and Ms. Roberts. We must therefore reverse the trial court's summary-judgment order and remand the case for trial on the merits.

 In attempting to further refute any evidence of the existence of a marriage, Ms. Roberts asserts that Ark. Code Ann. § 16-119-107(a) exhibits the intent of the legislature to make the marriage license a mandatory component of a valid marriage. That statute provides for the restoration of marriage records:

> (1) In cases where any marriage has been legally solemnized in any county, and the certificate of marriage required by law to be filed in the office of the recorder for the county, together with the record thereof, has been lost, destroyed, or burned, it shall be the duty of the person who solemnized the marriage, at the request and on the demand of either of the parties between whom the marriage was solemnized, to furnish him, her, or them, under his hand, a certificate of marriage.

> (2) The certificate . . . shall also set forth . . . that the original certificate of the marriage was made out by him and duly filed in the office of the clerk and recorder for the county, as required by law.

Ark. Code Ann. § 16-119-107(a)(1-2) (Supp. 1999) (Emphasis added). Ms. Roberts relies on sub-section (2) of the statute and contends that, because the statute requires the certificate to state that the original certificate was duly filed, the statute does not provide relief when the original certificate of marriage was never filed in the clerk's office. Ms. Roberts claims that, if the law did not require the certificate to have been filed as a requisite formality to the marriage, this provision would have been made available to everyone whether or not their original certificate was filed. Ms. Roberts ignores, however, the language of the statute in subsection (1) that requires both the certificate of marriage and the county's record thereof to have been destroyed before the statute comes into play. This indicates the legislature's intention to remedy situations where all records of a marriage have been accidentally lost or destroyed, rather than the situation where a marriage license is duly issued but a party to the marriage intentionally destroys the marriage certificate and never files it. Thus, Ark. Code Ann. § 16-119-107(a) does not apply to this case.

 Ms. Roberts also claims, in the alternative, that, if the court recognizes the existence of a marriage, she should be granted an order annulling the marriage on the basis of fraudulent inducement. Where the consent of either party to a marriage shall have been obtained by fraud, the marriage shall be void from the time its nullity is declared by a court of competent jurisdiction. *Ragan v. Cox*, 210 Ark. 152, 194 S.W.2d 681 (1946). As required on a summary judgment motion, Mr. Fryar met proof with proof in his pleadings by denying the existence of fraud and putting on evidence that Ms. Roberts considered herself to be his wife, including pictures of the wedding ceremony and cards given to him by Ms. Roberts signed "your wife" and "to my husband." Thus, a material question of fact remains as to whether a fraud was perpetrated on Ms. Roberts such that a marriage between the parties should be declared void.

Reversed and remanded.