The Honorable Bob Mathis State Representative 106 Leigh Circle Hot Springs, AR 71901
Dear Representative Mathis:
I am writing in response to your request for my opinion on a question concerning the recognition in Arkansas of a marriage under certain circumstances. Your request is made on behalf of a particular constituent who reports that he is going to be married in a civil ceremony in Dubrovnik, Croatia, to be followed later by a Catholic ceremony in Arkansas after the Catholic Church's annulment of his fiancée's previous marriage. He states that the marriage in Dubrovnik, Croatia will be in full compliance with Croatian laws. He further reports that he has purchased an Arkansas marriage license but was told by a deputy county clerk that a marriage performed outside of Arkansas would not be recognized according to state law. He asks:
 Since we will not be married by a minister registered with the State of Arkansas, what must I do to get my marriage recognized once we get home?
RESPONSE
In my opinion, Arkansas's recognition of the marriage described by your constituent is not dependent upon solemnization by a minister registered in Arkansas. Rather, the marriage in my opinion will be recognized as valid in the State of Arkansas based upon the fact of full compliance with the prerequisites for contracting and solemnizing a marriage in Dubrovnik, Croatia.
This conclusion follows from Arkansas's recognition of the general rule, with limited exceptions, that a marriage valid where it is celebrated is recognized as being valid everywhere.[1] See Etheridge v. Shaddock, 288 Ark. 481,706 S.W.2d 395 (1986); State v. Graves, 228 Ark. 378,307 S.W.2d 545 (1957) (citing RESTATEMENT CONFLICT OF LAWS);Feigenbaum v. Feigenbaum, 210 Ark. 186, 194 S.W.2d 1012 (1946). The court in State v. Graves, supra, quoted from a Nebraska decision as follows:
 "The validity of a marriage contract is to be determined by the law of the state where it was entered into. If valid there, it is to be recognized as such in the courts of this state, unless contrary to the prohibitions of natural law, or the express prohibitions of a statute."
228 Ark. at 383 (quoting from State of Nebraska v. James Hand,126 N.W. 1002 (Neb. 1910).
This common law rule, which is said to be based on "comity," that is, courtesy or respect (see 55 C.J.S. Marriage § 6 (1998) and 52 Am.Jur.2d Marriage § 79 (1970), is further explained as follows:
 [C]ourts ordinarily look to the law of the state or country where the ceremony took place, or, in the case of common-law marriage, where the marriage agreement was made, when faced with ruling upon the validity of a marriage with foreign characteristics — usually a marriage entered into outside the forum, or in the forum while the parties were domiciled elsewhere. Therefore, it follows that a marriage which is valid under the law of the state or country in which it is contracted will be recognized as valid everywhere, although there are important exceptions to this rule.[2]
52 Am.Jur.2d Marriage at § 80.
As reflected by this passage, the rule applies equally to marriages in a foreign country — that is, a marriage that is valid according to the law of the foreign country will be recognized as valid in the United States. Id. at § 84.[3]
Accordingly, I believe there is no cause for concern that the marriage described by your constituent will not be performed by a minister registered in Arkansas. In this regard, I note that the concern appears to be prompted at least in part by an opinion issued by one of my predecessors — Ark. Op. Att'y Gen. 1996-183 — involving a marriage that was to be solemnized in Italy by a minister whose ordination was recorded in White County. One of the issues in that opinion involved a failure to comply with A.C.A. § 9-11-218 regarding return of an executed marriage license to the clerk. It was concluded that such failure did not have the effect of rendering the marriage void because the Arkansas licensing statutes are directory only. Ark. Op. Att'y Gen. 1996-183, at 3 (citing DePotty v. DePotty, 226 Ark. 881,295 S.W.2d 330 (1956) and Estate of Wright v. Vales,1 Ark. App. 175, 613 S.W.2d 850 (1981)).
I realize that Opinion 1996-183 might leave the impression that in order for a marriage celebrated outside the state to be recognized in Arkansas, there must be compliance with our statutes regulating solemnization, which are clear in mandating that only certain specified individuals may solemnize marriages.See A.C.A. § 9-11-213, infra. Although the opinion was not directed to that precise issue, to the extent it can be so interpreted, I must disagree. As explained above, Arkansas generally recognizes the validity of a marriage that complies with the legal requirements of the jurisdiction in which it was performed.
Regarding such requirements, I should emphasize that it will be necessary to follow all of Croatian law with respect to both contracting and solemnizing marriage in that country. This observation is prompted in part by your constituent's statement that he has purchased an Arkansas marriage license. In this regard, it must be recognized that the Arkansas license will not be recorded unless and until there is conformity with our solemnization requirements, including the requirement that the marriage must be solemnized by one of the persons specified in A.C.A. § 9-11-213, which provides:
 For the purpose of being registered and perpetuating the evidence thereof, marriage shall be solemnized only by the following persons:
(1) The Governor;
(2) Any former justice of the Arkansas Supreme Court;
 (3) Any judges of the courts of record within this state . . .;
 (4) Any justice of the peace of the county where the marriage is solemnized . . .;
 (5) Any regularly ordained minister or priest of any religious sect or denomination;
(6) The mayor of any city or town;
 (7) Any official appointed for that purpose by the quorum court of the county where the marriage is to be solemnized; or
(8) Any elected district court judge. . . .
A.C.A. § 9-11-213(a) (Supp. 2005).
I do not know precisely why a clerk in this instance would have informed your constituent that a marriage performed outside of Arkansas would not be "recognized" according to state law. I can speculate, however, that the clerk may have been referring to the fact that there will be no Arkansas-recorded license until the marriage is solemnized by one of the above-authorized persons. This presumably will occur upon the holding of the anticipated Catholic ceremony. Until that time, the marriage will not be recorded in Arkansas. It will, however, be recognized inArkansas under the principle of comity, as discussed above.
As a final note regarding the prerequisites to marriage in Croatia, reference should be made to that country's "New Family Act," which is discussed at length in D. Jakovac-Lozic,Croatia's New Family Act and Its Implications on Marriage andOther Forms of Family Life, 31 Cal. W. Int'l L.J. 83 (2000). This article notes with respect to solemnization that the New Family Act provides for two forms of solemnizing marriage — a civil marriage executed before a registrar and a religious marriage executed before the representative of any religious community legally recognized and regulated by the Republic of Croatia. Id. at 88. Additionally, the parties to the marriage must: 1) be of the opposite sex; 2) provide evidence of consent to marry; 3) initiate the marriage by state-recognized authority (the registrar or a representative of a state-recognized religious community); 4) be of age of majority; 5) not be within a prohibited degree of consanguinity; and 6) be unmarried. Id.
at 86.
I assume your constituent is familiar with the applicable requirements, given his statement that the marriage will be in full compliance with Croatian law. He nevertheless may wish to refer to this article for further information.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] One notable statutory exception is that marriages between persons of the same sex are "void in Arkansas," it being "the declared public policy of the State of Arkansas to recognize the marital union only of man and woman." A.C.A. § 9-11-208(b) and (c) (Repl. 2002).
[2] The exceptions, none of which appears applicable in this instance, include the "universally recognized" exception that "a marriage valid where contracted will nevertheless not be recognized as valid in another state if such recognition would be contrary to a strong public policy of that state." 52 Am.Jur.2dMarriage at § 82. Other exceptions identified by the Arkansas Supreme Court in State v. Graves, supra, include polygamous marriage, incestuous marriage, and "[m]arriage of a domiciliary which the statute at the domicile makes void even though celebrated in another state." 228 Ark. at 381-82. Note also the statutory exception pertaining to same-sex marriage — A.C.A. §9-11-208 (supra at n. 1).
[3] Although there is authority to the effect that the converse of the general rule is true also — that is, that "a marriage invalid where contracted is invalid everywhere[,]" (id. at § 80) — it has been observed that "this negative rule of invalidity does not find much actual support in the holdings of the cases." 52 Am.Jur.2d Marriage at § 84. See also 82 ALR3d 1240 (2006).